ROBERT C. SCHUBERT (S.B.N. 62684)
WILLEM F. JONCKHEER (S.B.N. 178748)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law

*Local Counsel for Plaintiff*

RYAN M. KELLY (*pro hac vice to be submitted)*
**ANDERSON & WANCA**
3701 Algonquin Road, Ste 500
Rolling Meadows, IL 60008
Telephone: (847)368-1500
Facsimile: (847)368-1501
rkelly@andersonwanca.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SANDUSKY WELLNES CENTER, LLC., an Ohio limited liability company, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ALERE HOME MONITORING, INC., ALERE, INC., Delaware corporations, and ABBOTT LABORATORIES, an Illinois corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**CLASS ACTION COMPLAINT**

Plaintiff, Sandusky Wellness Center, LLC ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against ALERE HOME MONITORING, INC., ALERE, INC. and ABBOTT LABORATORIES ("Defendants"):

**PRELIMINARY STATEMENT**

1. This case challenges Defendants' practice of sending "unsolicited advertisements" by facsimile.

2. The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations promulgated under the Act, prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The JFPA provides a private right of action and provides statutory damages of $500 per violation. Upon information and belief, Defendants have sent facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the JFPA, including, but not limited to, the facsimile transmission of two unsolicited advertisements on August 09, 2016 and April 25, 2017 ("the Faxes"), true and correct copies of which are attached hereto as Exhibit A and made a part hereof. The Faxes promote the services and goods of Defendants. Plaintiff is informed and believes, and upon such information and belief avers, that Defendants have sent, and continue to send, unsolicited advertisements via facsimile transmission in violation of the JFPA.

3. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

4. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action, asserting claims against Defendants under the JFPA for sending faxes and other advertisements without displaying proper opt-out language or obtaining prior, express invitation or permission.

5. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative fact because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the JFPA. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7. Venue is proper in this District because Defendants committed a statutory tort within this district, and a significant portion of the events took place within this District. Further, Defendant Alere Home Monitoring, Inc.'s principal place of business is within this District.

8. Intradistrict Assignment: Pursuant to Civil L.R. 302(c) and 3-5(b), assignment to the San Francisco and Oakland Division of the Northern District of California (the "Division") is proper, because a substantial part of the events or omissions which give rise to the claims occurred in this Division. Defendants promote, market, and sell products and/or services in this Division, employ workers in this Division, and advertise in this Division. Further, Defendant Alere Home Monitoring, Inc. maintains its headquarters in this Division.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**PARTIES**

9. Plaintiff, Sandusky Wellness Center, LLC, is an Ohio limited liability company.

10. On information and belief, Defendant, ALERE HOME MONITORING, INC. ("Alere Home"), is a Delaware corporation with its principal place of business in Livermore, California. Alere Home offers a variety of medical devices for patients to self-test.

11. On information and belief, Defendant, ALERE, INC., is a Delaware corporation which owns Alere Home, and benefits, profits or receives some of the revenues from the sale of the medical devices for self-testing described on the unsolicited faxes.

12. On information and belief, Defendant, ABBOTT LABORATORIES, is an Illinois corporation.

13. On October 3, 2017, Defendant Abbott Laboratories acquired the stock of Alere, Inc. and its subsidiaries, including Alere Home, rendering Defendant Abbott liable for the actions of Defendant Alere Home.

**FACTS**

14. On or about August 09, 2016 and April 25, 2017, Defendants sent unsolicited facsimiles to Plaintiff using a telephone facsimile machine, computer, or other device. Copies of the facsimiles are attached hereto as Exhibit A.

15. On information and belief, Defendants receive some or all of the revenues from the sale of the products, goods and services advertised on the unsolicited faxes (Exhibit A), and Defendants profit and benefit from the sale of the products, goods and services advertised on the unsolicited faxes.

16. Plaintiff did not give Defendants "prior express invitation or permission" to send the faxes.

17. On information and belief, Defendants faxed the same and other unsolicited facsimiles without the required opt-out language to Plaintiff and more than 25 other recipients.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

18. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

19. Defendants' facsimiles do not display the necessary opt-out notice as required by 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

**CLASS ACTION ALLEGATIONS**

20. In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiff brings this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, and (4) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii).

Excluded from the Class are the Defendants, their affiliates, employees, agents and members of the Judiciary, and any person who has currently filed an action seeking compensation for TCPA violations. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

21. Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

22. Commonality (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

1. Whether the Defendants sent unsolicited fax advertisements;

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

2.      Whether Defendants' faxes sent to other persons, not the Plaintiff, constitute advertisements;

3.      Whether the Defendants' faxes advertised the commercial availability or quality of property, goods, or services;

4.      The manner and method the Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A, other unsolicited faxed advertisements or other advertisements without the required opt-out language;

5.      Whether the Defendants faxed advertisements without first obtaining the recipient's prior express invitation or permission;

6.      Whether the Defendants sent the faxed advertisements knowingly;

7.      Whether the Defendants violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

8.      Whether the faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

9.      Whether the Defendants should be enjoined from faxing advertisements in the future;

10.      Whether the Plaintiff and the other members of the class are entitled to statutory damages; and

11.      Whether the Court should award treble damages.

23.      Typicality (Fed. R. Civ. P. 23(a)(3)):      The Plaintiff's claims are typical of the claims of all class members. The Plaintiff received the same or similar faxes as the faxes sent by or on behalf of the Defendants advertising products, goods and services of the Defendants during the Class Period. The Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. The Defendants have acted in the same or in a similar manner with respect to the Plaintiff and all the class members by sending Plaintiff and

each member of the class the same or similar faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

24. Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)): The Plaintiff will fairly and adequately represent and protect the interests of the class. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

25. Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)): Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

1. Proof of the claims of the Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

2. Evidence regarding defenses or any exceptions to liability that the Defendants may assert and prove will come from the Defendants' records and will not require individualized or separate inquiries or proceedings;

3. The Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

4. The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one (1) proceeding based upon common proofs; and

5. This case is inherently manageable as a class action in that:

i. The Defendants identified persons or entities to receive the fax transmissions and it is believed that the Defendants' computer and business records will enable the Plaintiff to readily identify class members and establish liability and damages;

ii. Liability and damages can be established for the Plaintiff and the class with the same common proofs;

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

iii. Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

iv. A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

v. A class action will contribute to uniformity of decisions concerning the Defendants' practices; and

vi. As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**COUNT I**

**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227 *et seq.***

26. The JFPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

27. The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

28. **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

1. A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

2. A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

     3.    A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

     4.    The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶31 of its 2006 Report and Order (*In re Rules & Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon consumers and businesses giving them the right, and means, to stop unwanted fax advertisements.

29.    **2006 FCC Report and Order.** The JFPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the JFPA, including the JFPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

     1.    The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under JFPA § (b)(1)(C)(i) and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶8-12 and 17-20);

     2.    The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under JFPA (b)(1)(C)(ii) and provides that the failure to comply with these requirements

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶13-16);

3. The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under JFPA (b)(1)(C)(iii) and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶24-34).

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements cannot claim the exemption from liability contained in JFPA § (b)(1)(C).

30. **The Faxes.** Defendants sent the advertisements on or about August 09, 2016 and April 25, 2017, via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class. The Faxes constituted advertisements under the Act. Defendants failed to comply with the Opt-Out Requirements in connection with the Faxes. The Faxes were transmitted to persons or entities without their prior express invitation or permission and Defendants are precluded from asserting that Defendants had an established business relationship with Plaintiff and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendants violated the JFPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiff and members of the Class. Plaintiff seeks to certify a class which includes this fax and all others sent during the four years prior to the filing of this case through the present.

31. **Defendants' Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class other faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express invitation or permission and without

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

complying with the Opt-Out Notice Requirements. By virtue thereof, Defendants violated the JFPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendants may be continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

32. The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendants' violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

33. The JFPA is a strict liability statute, so the Defendants are liable to the Plaintiff and the other class members even if their actions were only negligent.

34. The Defendants knew or should have known that (a) the Plaintiff and the other class members had not given prior express invitation or permission for the Defendants or anybody else to fax advertisements about the Defendants' products, goods or services; (b) the Plaintiff and the other class members did not have an established business relationship; (c) Defendants transmitted advertisements; (d) the Faxes did not contain the required Opt-Out Notice.

35. The Defendants' actions caused damages to the Plaintiff and the other class members. Receiving the Defendants' junk faxes caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of the Defendants' faxes. Moreover, the Defendants' faxes occupied the Plaintiff's and the other class members' telephone lines and fax machines. The Defendants' faxes cost the Plaintiff and the other class members time, as the Plaintiff and the other class members and their employees wasted their time receiving, reviewing and routing the Defendants' unauthorized faxes. That time otherwise would have been spent on the Plaintiff's and the other class members' business or personal activities. The Defendants' faxes unlawfully interrupted the Plaintiff's and other class members' privacy interests in being left alone.

WHEREFORE, Plaintiff, SANDUSKY WELLNESS CENTER, LLC, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants,

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

ALERE HOME MONITORING, INC., ALERE, INC., and ABBOTT LABORATORIES, jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint the Plaintiff as the representative of the class, and appoint the Plaintiff's counsel as counsel for the class;

B. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

C. That Court enjoin the Defendants from additional violations; and

D. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Date: August 10, 2018

By: /s/ Willem F. Jonckheer

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: 415-788-4220 / Fax: 415-788-0161
rschubert@sjk.law
wjonckheer@sjk.law

*Local Counsel for Plaintiff*

RYAN M. KELLY (*pro hac vice to be submitted*)
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500 / Fax: 847-368-1501
rkelly@andersonwanca.com

*Counsel for Plaintiff*

# EXHIBIT A

Alere Home Monitoring, Inc
6465 National Drive
Livermore, CA 94550
Office: 1.877.282.4669
Fax:1.925.606.6978
alerecoag.com

Dear Health Care Provider:

For over 15 years, Alere Home Monitoring has offered a variety of medical devices for Patient Self-Testing. Today, our Patient Self-testers use the Roche CoaguChek® XS meter – the same easy-to-use meter technology that healthcare professionals trust to give fast, accurate INR test results in office.

You are receiving this letter because a voluntary withdrawal has been issued for one of the home INR meters we offered in the past. Details regarding the voluntary withdrawal are available at www.inr-care.com. We are not aware of any patients that you have currently using the device subject to the voluntary withdrawal. Please contact us if this is not the case.

**The Roche CoaguChek® XS is not impacted by the voluntary withdrawal and Alere Home Monitoring is not making any change to our services.** Patients may continue to use the Roche CoaguChek® XS meter as prescribed by their physician.

Our home INR monitoring program makes managing warfarin **simple** and **convenient** for you and your patients, plus it is **proven** to improve results for patients on anticoagulation therapy.[1]

Enrolling patients is easy: **Call us at 877.262.4669, option 4** to provide your Verbal Order and a representative will explain next steps. Alere Home Monitoring takes care of the rest. We will verify insurance coverage, advise the patient of any potential out-of-pocket cost, and arrange for their Face-2-Face® training on the meter.

Please call us today with any questions. Knowing now matters.™

Regards,

Alere Home Monitoring, Inc.

Confidential Notice: The information contained in this facsimile transmission is privileged and confidential, intended for the use of the addressee listed on this cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42CFR, Part 2 and 45CFR, Part 160).

1. Am J Manag Care. 2014;20(3):202-209.

© 2016 Alere. All rights reserved. The Alere Logo, Alere, Face-2-Face, and Knowing now matters are trademarks of the Alere group of companies. CoaguChek is a trademark of Roche Diagnostics GmbH. PN: 1611343-01 08/16



04/25/2017 1:52 PM Alere → 14196256004 1

Alere Home Monitoring, Inc.
6465 National Drive
Livermore, CA 94550
Office: 1.877.262.4669
Fax: 1.626.608.6976
alere.com
ptinr.com

# Fax

From: Alere Home INR Monitoring | Date: April 25, 2017

Re: Insurance Coverage Information | Pages: 3 (including cover)

Comments:

Thank you for your participation in our Home INR Monitoring Program. We appreciate you choosing Alere to help with your anticoagulation patients. We are pleased to share the attached contract announcement which may be applicable to patients in your area. Please find a prescription form for your use if you have any patients you need to refer for service at this time.

Please contact me directly if you have any questions or need assistance at 1.877.262.4669 extension 2815.

Thank You,

Dan Stenger
Alere Home Monitoring

*Sign up today for program updates, new articles from our PTINR.com® website, and more by email!*

Confidential Notice: The information contained in this facsimile transmission is privileged and confidential, intended for the use of the addressee listed on this cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42CFR, Part 2 and 45CFR, Part 160).

IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY CALLING THE PHONE NUMBER ABOVE TO ARRANGE FOR THE RETURN OR DESTRUCTION OF THESE DOCUMENTS.

IF YOU NO LONGER WANT TO RECEIVE PROMOTIONAL FAXES FROM ALERE HOME MONITORING, PLEASE CALL 877.262.4669 EXT.2815 WITH THE FAX NUMBER(S) YOU WANT TO OPT-OUT.

© 2017 Alere. All rights reserved. The Alere Logo, Alere and PTINR.com are trademarks of the Alere group of companies.
PN: 1711528-01 4/17

# CONTRACT ANNOUNCEMENT

Alere Home Monitoring, Inc.

We are pleased to announce **Anthem Blue Cross Blue Shield of Ohio** is now contracted with Alere Home Monitoring for the provision of INR home monitoring services.

**Anthem** members who meet medical coverage criteria may qualify for PT/INR self-testing services of the Alere™ Home INR Monitoring program.

To refer a patient, please call 1.877.262.4669 or fax to 925.606.6978.

Alere

Alere Home Monitoring, Inc. PTINR.com®

© 2016 Alere. All rights reserved. The Alere Logo, Alere and PTINR.com are trademarks of the Alere group of companies.
PN: 1811286-01 06/16

04/25/2017 1:52 PM Alere → 14196256094 3

# Alere™ Home INR Monitoring Physician Form

## 1. Patient Information

First Name, M.I., Last Name | Date of Birth

Patient Phone Number(s) / | Patient Email

☐ Additional Patient information attached

Warfarin Start Date: ____ / ____ / ____
Month Day Year

## 2. Target INR Range

______ TO ______
LOW HIGH

Alere Home Monitoring, Inc. will receive test results directly from patient and Fax ALL Results and Call for All Values <1.5 and >5.0 until Physician Office Preferences are on file. Patient will communicate INR test results based on Physician Office Preferences.

## 3. Physician Information

Prescribing Physician Name | NPI #

Address (Prescribing Physician)

Group Practice or Hospital Name (Prescribing Physician) | Prescribing Office phone | Office fax

Managing Physician, Practice or Clinic Name | Managing Office phone | Office fax

## INR Monitoring System

Patient will be provided an INR Meter and strips approved for home use. Available meters do not have approval for pediatric use.

## 5. Test Frequency

☐ Weekly[1]
[1]Medicare will cover up to 52 tests per year

☐ 2-4 Times Per Month

## 6. Training Preference

☐ Face-2-Face® Training arranged by Alere Home Monitoring

☐ My staff will train the patient
(requires completion of Alere Master Faculty Training)

☐ Physician confirms that this patient has received training on the prescribed monitor and home INR testing

Physician can determine Office Preferences for Monitor Type, *Reporting Instructions and Training Preference* with an Alere Home Monitoring Sales Representative.

## 4. Diagnosis* *(check up to four)*

| ICD-10-CM CODE | Description |
|---|---|
| ☐ Z95.2 | Presence of Prosthetic Heart Valve |
| ☐ I48.2 | Chronic atrial fibrillation |
| ☐ I48.0 | Paroxysmal atrial fibrillation |
| ☐ I82.501 | Chronic, unspecified VTE in deep veins of right lower extremity |
| ☐ I82.502 | Chronic, unspecified VTE in deep veins of left lower extremity |
| ☐ I82.503 | Chronic, unspecified VTE in deep veins lower extremity, bilateral |
| ☐ Z86.718 | Personal History of other venous thrombosis and embolism |
| ☐ I26.99 | Other Pulmonary Embolism without acute cor pulmonale |
| ☐ D68.51 | Activated protein C resistance, primary |
| ☐ Z79.01 | Long term (current) use of anticoagulants |

Other:

## 7. Statement of Medical Necessity/ Prescription

This form serves as an order for Home INR Monitoring equipment, supplies, and related services. Equipment and supplies may be provided by either Alere or its third party vendors. I acknowledge clinical data and account correspondence may be sent by fax. Incomplete items will revert to Physician Office Preferences.

**ITEMS PRESCRIBED:** One (1) Home INR Monitoring System, and related testing materials (i.e. Test Strips and Lancets). I certify that it is medically necessary for the patient to self-test frequently in order to maintain a stable INR, optimize its therapeutic effects and avoid the complications identified on warfarin's product labeling. **DURATION:** Patient shall continue Home INR Monitoring as prescribed for as long as he/she remains capable and compliant with my instructions, but in no case for less than one year, unless otherwise noted. ☐ Other:

**Medical Necessity:** I further certify that the patient's medical record contains supporting documentation to substantiate this medical need. I certify that this patient has been on warfarin therapy for 90 days. I certify that this patient will undergo a training program which include the Face-2-Face® training protocols to ensure that he/she is capable of self-testing. This patient or their caregiver has no condition that makes self-testing unsafe (e.g. cognitive disorders). I agree to notify Alere if the patient or their caregiver develops a condition that makes self-testing unsafe.

## 8. PHYSICIAN SIGNATURE: (In compliance with CMS Pub. 100-08, Transmittal 327, Section 6808.3. Stamped Signatures are not acceptable.)

Date

FAX COMPLETED FORM AND PATIENT INFORMATION TO 1.925.606.6978

Alere Home Monitoring, Inc. • 6465 National Drive • Livermore, CA 94550 • Phone 1.877.262.4669 • ptinr.com
Submit your prescription electronically with e-Prescribe at alerecoag.com

Alere Knowing now matters.®

A/C # 17HCOH

*Listed codes from CMS Manual System PUB 100-20 *Medicare Claims Processing*. Coverage determination is based on specific health plan guidelines.

© 2016 Alere. All rights reserved. The Alere Logo, Alere, Face-2-Face and Knowing now matters are trademarks of the Alere group of companies. All trademarks referenced are trademarks of their respective owners. PN: 1511091-07 2/17